I'd like to reserve two minutes for rebuttal, if I may. Of course. My name is Tim Bechtold, representing the Alliance for the Wild Rockies plaintiffs here. I think the primary issue in this case is what constitutes an unroaded tract and what roadlessness is. Before we get to the primary issue, in your view, don't we have a problem with the jurisdictional issue as to whether the Alliance for the Wild Rockies has indeed any Article 3 standing to challenge the Forest Service project? As I read it here, there's no evidence on the record that any member of Wild Rockies has suffered any injury in fact from the proposed project. We have at best a guarantee declaration, which is late, was not filed in the trial court, no motion to amplify the record before us, and the guarantee declaration is unsworn. What other evidence is there that any member of the Alliance for the Wild Rockies has suffered an injury in fact as a result of the Forest Service prospect of cutting down or thinning out 180 acres because of infestation? I'd like to address that two ways. The first is, due to the posture of this case, the Summers decision came out from the Supreme Court after briefing was complete at the district court. And for that reason, I submitted, along with the opening brief here, the guarantee declaration, in which Mike Geraghty averts pursuant to 1746. He doesn't avert. He writes. He doesn't swear. He doesn't have an affidavit. He doesn't say that he's telling the truth under penalty of perjury. Excuse me. It's my belief that I have a declaration of interest. It's a two-page declaration. I declare as follows. Yes. Your Honor, pursuant to 28 U.S.C. 1746, the declarant, when a declaration is made pursuant to 1746, it is under penalty of perjury. How do you know that? Pardon? Does 1746 say anybody who invokes 1746 invokes penalty of perjury? I don't know the exact language of 1746 off the top of my head, but I believe it does, Your Honor. That would be very unusual. Is that all you have to say on that subject? Yes. Is there any other evidence in the record of any other member of Alliance for Wild Rockies who has an injury in fact? No, Your Honor, there is not. The only averment is the general allegations in the complaint, which in a similar case, this panel of this Court held six weeks ago that because the defendants had not challenged standing below, all that was necessary was a general allegation of injury pursuant to Lujan. So a panel of this Court has already held that in a similar case where Summers was intervening between the briefing below and the standing issue above, that the general averments in the complaint were sufficient. And, you know, I don't want to run afoul of 36-3, but it was 08-358-58, a panelist court with O'Scanlan and Judges O'Scanlan and Smith and a district judge from Idaho. This is an unpublished memorandum? It is. So I don't want to run afoul of 36-3, but I just want to know that a similar panel of the Court has handled that in a different way. I think that the Garrity Declaration, though, as you may think it's unsworn, he does Well, it wasn't before the district court. How do you get around that? It wasn't because standing was never challenged at the district court. So we're in between this Northwest Environmental Defense Center case, which says that in that case, standing wasn't an issue. It was an administrative agency. It was the BPA. The Bonneville Power Administration. And it said, okay, so in an appeal from the BPA's final decision, the petitioners could establish standing during the briefing phase on appeal before us. Of course, here it's not an administrative agency situation. But then Summers comes out, and in that case, the plaintiff's standing was challenged before the district court, and the district courts held that they did have standing, and then the Supreme Court reversed and said you can't supplement on appeal. So this is a situation in between these. So assuming we got over the technical difficulties about the declaration, would we be then needing to decide, is it more like Northwest Environmental Defense Center or more like the situation in Summers and making a new rule of law there? I don't think so. I think that it's that the – I think that under the BPA case, this panel of this you can submit the standing declarations. But there we said that standing doesn't count before an administrative agency. It's not an issue. Obviously, it is an issue before the district court. So it seems like it's a different type of situation, not exactly on point. No, and I think what Lujan said, the Supreme Court said in Lujan, is that when controverted, you can put in evidence of standing. And standing was never controverted until the Forest Service's response brief here. But we have a duty, so was Spondy, to consider standing. And if you – I think that the Gearty declaration – I mean, because it's – standing was never controverted below. And so the allegations in the complaint suffice to show the general allegations of standing, of injury. And that's – because it was never controverted below, Lujan suffices to carry that. And so you're saying at Summers, it was controverted below, and then they weren't able to resupplement on appeal. Is that – is that how you're distinguishing Summers? Yes. So it's – the factual situation at Summers is not replicated here. So when – the first time that it's controverted, you get to supplement the pleadings, is how you would characterize the rule. Or you get to response – you get to respond to it, right? And I think that's what Lujan – the rule of Lujan. Well, I have about two minutes left. Should I go into unroadedness, or do you want to go there? The – I'll address it briefly, and that is simply this. The district court got it wrong. The district court said that these areas were unroaded and referred to a document in the record, Administrative Record 9-1, to say that – to say that Unit 1 had road and prior harvest units and things like that. And that's simply not the case. What the Forest Service was talking about was private land adjacent to that unroaded area. Even so, why does that constitute an extraordinary circumstance? I mean, it's not – they've got their categorical exemption, and they say, as examples of extraordinary circumstances, not an inventoried roadless area. I take it there's no dispute that this area is not an inventoried roadless area. And you make an argument, well, it's adjacent and whatever. But why should that take it out of their categorical exemption? Well, the rule of this – the law of this circuit is that whenever there is an unroaded area that's potential – has potential inclusion in the Wilderness Act designation, it has to be considered for its roadless characteristics. That's not really what Martin said, is it? I mean, Martin, it was like 5,000 acres. No, not – It seems like a different situation. That's not so, actually, Your Honor. What happens is, if there's a wilderness area that has an unroaded area adjacent to it, then that unroaded area is potential – can potentially be added to the wilderness designation because it's adjacent to a roadless expanse. So rather – I'd like to still maintain some time for rebuttal, so I'm running low. We'll hear from the government. My name is Kurt Kassner, and I represent the United States. I want to begin with this Court's jurisdiction. I think Wild Rockies did not present evidence before the district court sufficient to demonstrate injury in fact. The evidence is deficient in two senses. First – Well, I didn't – let me ask you, first of all, you didn't challenge standing at the district court level, correct? No, we didn't.  So this is the first time you're raising standing. Why shouldn't they have an opportunity to present evidence now that it's controverted for the first time? That seems to be what Lujan suggests. Well, I think there are two reasons. The first is that in Summers, the Supreme Court said that there isn't an opportunity to remedy a deficiency in standing. But there it was controverted at the district court, and the district court determined that they had standing. So then they get – it's the second bite of the apple at the appellate stage. Why should they get another chance at that issue that the district court determined? Here, there was no determination at all. Well, it's not that the government should get another chance. It's that the court of appeals has an independent obligation to satisfy itself that it has standing over the appeal. And Alliance for Wild Rockies points to if controverted language from Lujan. But if you look at that language, that language is talking about what evidence must be presented at trial if the affidavit supporting standing is challenged. So what Lujan is saying there is that if there's a sufficient standing affidavit and the defendant does not say anything about the inadequacy of the affidavit or did not present evidence that that affidavit is sufficient, then there's no additional obligation that attaches at trial. That's what it means when it says if controverted. It doesn't mean that once a case reaches a summary judgment motion – a summary judgment, the standard for dismissing is not higher than at the 12B6 stage. I think Lujan is very clear that there are separate standing thresholds for those two stages. It's also not necessarily material in this case because I'm not convinced that the allegations of the complaint even satisfy the 12B6 standard. So you don't necessarily need to get into whether Lujan raises the stakes at the summary judgment stage. You simply need to address whether there is sufficient support for standing. Let's assume that the allegations in the complaint are sufficient to establish standing. I thought they were reasonably robust. At this stage now where nothing was raised by the government before the district court, now we're on appeal. Is Summers the only case you – is the case you would point to to say they can't supplement, they can't present evidence to rebut your new standing argument, or is there any other case that we've – where we've held that? Well, I think Summers is the reason why, even if they had properly moved to admit this standing declaration into the record, they would not be able to do so successfully because they've already passed summary judgment and they don't have the opportunity to provide a declaration past that point. Independently of Summers, Lowery v. Barnhart says that if you want to submit evidence into the record as part of the record before the court, you need to explicitly do so. In that case, the government attorney was actually sanctioned for attempting to submit a document without explaining to the court that they hadn't moved for admission in the record. And that's what happened in this case. If you look at Pacer, essentially, the opening brief came in and then there's an additional document attached to it with no explanation whatsoever. You open it up and it's – it purports to be a standing affidavit, although it doesn't say that it's sworn. And there's no comment on it whatsoever. And it's partially, you know, the government brings up standing both because, you know, when a case arrives in my office, I have an independent obligation to determine that they're standing, but also because there's sort of a glaring admission – admission in this case that something is awry with the standing below because counsel with no notice and no explanation has inserted a new affidavit that he now thinks is sufficient after Summers without moving it to be admitted. And I think that problem is independent from the Summers problem, which is whether he can – whether the mechanism he used to cure the standing defect is sufficient. If I can briefly touch on the roadless issue, there's no dispute that a sanitation harvest of this size generally falls within a categorical exclusion. Alliance for Wild Rockies tries to make an argument that the project site is, quote, an unroaded area contiguous to inventory roadless areas. That doesn't come from a statute. It comes from this case – this Court's decision in Martin. And in Martin, the Court held that even where a track of land is slightly too small to form a wilderness area on its own, if it could be connected to a larger area to form, quote, a contiguous roadless expanse, then the Forest Service should nonetheless consider its eligibility for inclusion in a wilderness area. If you look at the tracks of land in this case, they're not even debatably sufficient for inclusion in a wilderness area. The track at issue in Martin was 4,200 acres, which was just too small to be included. These are two tracks, each around 100 acres. And as is fairly clear from the record, neither of them would be suitable to form a larger roadless expanse with the inventory roadless area. One of them is sort of categorical and touches at a very discreet point. But on one side, there's already been timber harvest, and on the other side, there's private land, so there's no way to combine that section into the larger track. The other parcel is even smaller. It has a road running through it, and it's not directly adjacent to the wilderness area. You'd need to go through another parcel of land before you would touch the roadless inventory area. You'd need to go through another parcel of land before you touch. So these tracks are nothing like the tracks at issue in Martin. And if this Court has any particular questions. Thank you. Thanks. The case I mentioned prior, I actually moved. There was a standing declaration submitted after summers, and the Ninth Circuit struck it. And so it made sense at that time to preemptively put in a declaration for Garrity to show injury in fact. The deal with the unroaded areas is that it doesn't touch at just one discreet point. It actually touches at more than one point because it's not just the cutting unit that's unroaded. Cutting unit one is bigger than the section area is bigger than cutting unit one. And this is similar to a case that I had before you, Judge Kavinsky, about seven years ago. It was Sierra Club versus Austin, where this issue was the issue there as well, where the Ninth Circuit held that these areas are, unroaded areas are eligible for wilderness designation and have to be considered for their roadless characteristics and their wilderness characteristics. So it's the same issue there as here, in which case the Ninth Circuit held then and should hold here as well, that whenever you have a contiguous unroaded area to an inventory roadless area or to wilderness, it is absolutely eligible for wilderness designation and has to, under Smith, be considered for its wilderness characteristics. Kennedy. You don't agree with the government's position that these two areas are not contiguous to inventory roadless areas? No, they're contiguous with the Crazy Mountain inventory roadless area, which is 159,000 acres. It's absolutely eligible for wilderness. And if you look at the map that's inserted in the brief, you'll see that Cutting Unit 1, the cutting unit touches the roadless area at a distinct point, but that whole section is more than just a distinct point. And wilderness areas have all sorts of weird shapes. They have weird shapes because there's roads all around. And so inventory roadless areas and roadless areas and unroaded areas have weird shapes, and that's because they gerrymander them around to fit them in between roads. So I think the law of this circuit is well established, is when you have undeveloped tracts of land, per Smith, you have to. Do you disagree with Council that Unit 2, which is 25 acres, has a road running through it right now? There's a campground in my brief, as I mentioned. The north lobe is unobstructed access to the roadless area. The south lobe is in the campground between the road. So as I mentioned in my brief, it's the north lobe of Unit 2 that has to be analyzed for roadlessness. How many acres would that be? I don't know. They didn't say how much is in the north lobe and how much is in the south lobe. It looks like 20 acres. And the reality of the situation is this is a helicopter harvest, and it's not going to happen. They can't afford to cut it because helicopters are too expensive. So Unit 1 is just not going to get cut. So, I mean, despite their intention to do so, it's not going to happen. There's a practical effect. Well, then you have no problem. Yes.
judges: Kozinski, Bea, Ikuta